**PELTON GRAHAM LLC**

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

September 8, 2021

**VIA ECF**

Hon. Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East,
Brooklyn, New York 11201

**Re:** ***Rivera v. Sigma Diner Corp.,***
**No. 20-cv-5229 (LDH)(PK)**

Dear Judge Kuo:

This office represents named plaintiff Jose Rivera and opt-in plaintiff Rogelio Reyes (collectively, the "Plaintiffs"). We write, jointly with counsel for Sigma Diner Corp. d/b/a Stop 20 Diner, 1336 Hempstead Realty LLC (with Sigma Diner Corp., the "Corporate Defendants"), Stephen Serafis and Konstantinos Serafis (the "Individual Defendants" and, with the Corporate Defendants, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's July 26, 2021 Order. Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.[1]

## I. Procedural History and Plaintiffs' Allegations

Plaintiff Rivera commenced this action by filing the Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on October 29, 2020. (Dkt. No. 1). Defendants filed an Answer on December 23, 2020 denying all material allegations. (Dkt. No. 9). On March 16, 2021, Plaintiff Reyes joined this Action by filing a Consent to become a Party Plaintiff form. (Dkt. No. 10).

On October 30, 2020 the Court issued an Order setting an initial pretrial discovery and mediation schedule. (Dkt. No. 5). Pursuant to this Order, the Parties exchanged certain discovery necessary to facilitate settlement discussions. (Pelton Aff. ¶ 8). Plaintiffs provided certain disclosures, an initial damages calculation, time and wage records, and employee schedules. (*Id.*) Defendants provided time and wage records and payroll summaries for both Plaintiffs. (*Id.*)

[1] Plaintiffs will file the fully executed Settlement Agreement when the outstanding signatures are provided.

The Parties participated in a video Zoom mediation before James A. Brown, Esq. on June 28, 2021. (Pelton Aff. ¶ 9). The Parties reached a settlement in principle at that time. (*Id.*) Over the next several weeks, the Parties finalized and drafted the Settlement Agreement. (*Id.*) As set forth in the Settlement Agreement, the Agreement, as well as the mediation proceedings, were translated into Spanish for Plaintiffs by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**. (*Id.* ¶ 10).

## II. The Settlement Accounts for Litigation Risk

Plaintiffs were kitchen employees at Defendants' diner, Stop 20 Diner, located at 1336 Hempstead Turnpike, Elmont, New York 11003, where their duties included preparing and cooking food, cleaning and stocking the kitchen. Plaintiffs allege that they typically worked six (6) or seven (7) days per week, between eight (8) and eleven (11) or more hours per day. Plaintiffs allege that they were paid flat weekly rates that did not provide overtime premiums even though they typically worked well in excess of forty (40) hours per week or spread of hours premiums for days that they worked a spread of hours exceeding ten (10) hours. Plaintiffs also allege that Defendants failed to provide them with accurate and proper wage notice or accurate wage statements that fulfill the requirements of the NYLL § 195.

Throughout the litigation, the Parties have disputed issues of fact, particularly the accuracy of the time and wage records produced by the Defendants. Defendants maintain that their time and pay records are accurate and demonstrate that Plaintiffs were paid correctly. Plaintiffs allege that the records produced are inaccurate, contain edited time punches, fail to account for all hours worked by Plaintiffs, and show wage rates that are not credible and do not reflect the manner that they were actually paid.

While Plaintiffs believe that a factfinder would credit their testimony over Defendants, Plaintiffs recognize that existing time and pay records could potentially limit the amount of damages he could recover at trial on all their claims if a factfinder credited Defendants' testimony and records in their entirety.

In preparation for the mediation Plaintiffs revised their initial damages analysis, specifically adding damages for Plaintiff Reyes, based primarily upon Plaintiffs' recollections of their hours worked and wages paid. In total, Plaintiffs calculated $75,577.11 in unpaid overtime, $10,885.14 in unpaid spread of hours premiums, $20,000.00 in wage notice and wage statement damages, $86,462.25 in liquidated damages and $23,780.63 in prejudgment interest as of June 14, 2021, the date of Plaintiffs' mediation statement.

Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they would receive much lower damages, or nothing at all on their claims. As mentioned above, the Parties have disputes as to the facts and merits of Plaintiffs' claims and the accuracy of Defendants' records. Accordingly, Plaintiffs prefers to settle now for an amount that they would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $90,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial. Here, Plaintiffs' recovery exceeds the maximum calculated unpaid wage damages.

## III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $90,000.00 (the "Settlement Amount"). Of the Settlement Amount, $30,758.33 is payable to Plaintiffs' counsel (consisting of $1,137.50 in expense reimbursements and $29,620.83 in attorneys' fees). The remaining $59,241.67 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiffs and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants' interest in

preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.*, No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

## IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of September 8, 2021, Plaintiffs' counsel has spent more than 110 hours in prosecuting and settling this matter, resulting in a lodestar of $28,997.50. *See* Pelton Aff. Ex. C. Plaintiffs' counsel has spent $1,137.50 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $29,620.83) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, and represents 1.02 times the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern and Southern Districts of New York. In fact, the same rates have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

## V. The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks, supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc*., No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations and exchange of damages and documents. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including records produced by Defendants and disputed merits issues. Due to several disputed issues of fact, the parties would likely need to engage in discovery including depositions, as well as motion practice including collective and class certification, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

* * * * *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

By: */s Brent E. Pelton, Esq.*
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
**PELTON GRAHAM LLC**
111 Broadway, Suite 1503
New York, New York 10006

*Attorneys for Plaintiffs*

By: */s John Diviney, Esq.*
John Diviney, Esq.
**RIVKIN RADLER, LLP**
926 RXR Plaza
Uniondale, New York 11556

*Attorneys for Defendants*

cc: All counsel (via ECF)